DOUGLAS COUNTY (FIRST NAT. BANK v.). See Case No. 4,799.

DOUGLAS COUNTY (FIRST NAT. BANK OF OMAHA v.). See Case No. 4,809.

DOUGLAS COUNTY. BOARD OF COUNTY COM'RS OF (ADAMS v.). See Case No. 52.

## Case No. 4,031.

### The DOUGLASS.

#### [1 Brown, Adm. 105.] [1]

District Court, E. D. Michigan. March, 1863.

COLLISION—LOOKOUT—SAILING VESSELS—EVIDENCE—ADMISSIONS.

1. In a collision between two sailing vessels, one close-hauled and the other with the wind free, the latter was *held* in fault for an insufficient lookout, and for failing to give way in time.

2. A lookout must be constantly at his post, and must not be interrupted in the performance of his duty.

3. But little credence can be given to the testimony of a sailor who contradicts statements deliberately made by him, in writing, immediately after the collision.

4. Great weight should be given to the admissions of the master of a colliding vessel, though not upon deck at the time of collision, who states to the injured party that his own vessel was in fault, and promises to pay the damages done by her.

Libel and cross libel for collision between the schooners Douglass and White Cloud, in the passage between Pointe au Pelée and Pointe au Pelée Island, in Lake Erie, on the morning of July 6th, 1861. The Douglass was bound from Oswego to Chicago, and at the time of the collision was sailing upon a W. N. W. course, having the wind free and nearly abeam. The White Cloud was at the same time bound down the lake, upon an E. S. E. course, close-hauled upon the starboard tack. The night was dark but clear, and lights could readily be discerned. It was averred on the part of the Douglass, that the White Cloud had no light and no proper lookout. This was denied on behalf of the White Cloud, and the fault charged upon the Douglass, that she had no proper lookout, and failed to give way as by law she should have done.

J. S. Newberry, for the White Cloud.

W. A. Moore, for the Douglass.

WILKINS, District Judge. From the closest attention to the proofs on trial, and the application of the rule of law governing the facts unquestionably established, I am clearly satisfied that there was no fault in the White Cloud. In her navigation she kept her course as was her duty. She was heading E. S. E. on the starboard tack, by the wind, which was south, close-hauled, with a bright light burning, sufficiently admonitory to all approaching vessels that

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

were vigilant and kept a proper lookout; her speed was about six miles an hour; a competent crew was on duty. The last fact has been unsuccessfully contested, and had it been otherwise, the incompetency alleged would be of no weight, beyond a mere presumption, clearly rebutted by the preponderance of testimony, as to her keeping her course until the very moment of collision. But little reliance can be placed on the witness John Clancey, the lookout on the White Cloud, whose voluntary statement, reduced to writing a few days after the event, in the presence of his shipmates, fully agreeing with them in their account of the occurrence, does by no means, in this essential particular, correspond with his evidence as a witness on the stand. It is safer to trust to the narrative of a sailor, made when all the incidents were fresh in his memory, than condemn on testimony given a year subsequent, and after appliances brought to bear upon him, probably superinducing a contrary statement. Suspicion will attach under the circumstances, especially where he is brought to give evidence against his own vessel, impeaching the credit of his first story. No fault therefore can be attributed to the management of the White Cloud. Had her crew been inexperienced, and that had produced the collision; or if the wheelsman had been incompetent, and his unskillful steering had caused the calamity; or if her light had been obstructed for a moment, which does not clearly appear, and in consequence she had run into the other vessel, such showing would place her in fault. But such was not the case; the vessel was managed well, her light was bright, and although the wheelsman was young and inexperienced, the rule of the road was strictly observed. Incompetency or negligence must be such as to cause the collision, and fault cannot be imputed where the law of navigation has been followed.

This determination leads to the next question, viz.: Was there fault in the Douglass? It occurred to the court, during the progress of the trial, and from the evidence of the first mate of the Douglass, that such must be the conclusion reached, and that the proofs would not warrant a decree of inevitable accident. In cases of this description, there is usually much conflicting testimony. Hence the court should exercise every caution in scrutinizing evidence, and sift as well as weigh the proofs.

On the night in question, the Douglass was sailing up the lake, bound from Oswego to Chicago, freighted with iron, and was passing through Pointe au Pelée, with a free wind, her course W. N. W., and her speed about seven knots an hour. Her captain had retired, leaving the charge of the deck with the first mate, White, and a competent wheelsman, lookout and deckhands, unsuspicious of danger. The mate was beguiling the passing hour with humorous nar-

rative to the wheelsman, when his attention was suddenly called to the light of the White Cloud, and he ran forward exclaiming: "Where the devil is the lookout?" In haste, he gave the necessary order to "hard up," but immediately reversed the same in the fright and confusion of the moment. His order to port was too late. The peril of navigation by night, on ocean, lake and river, whether by steam or canvas, demands constant and uninterrupted vigilance. The officer of the deck is bound to be active; the lookout must be vigilant, and the wheelsman, who has charge of the helm, must not be disturbed in his duty. Their appropriate responsibilities are incumbent upon each, but the deck officer, for the time, supervises all. The distraction or perversion of the attention of either lookout or wheelsman, by the master or mate, leading to a neglect of duty and consequent collision, places the vessel in fault, and makes the owner and master responsible. The duties of lookout and wheelsman demand constant vigilance. The one must give timely warning of approaching peril, and the other must be ready to respond to the appropriate order of the master of the deck. To the subordinates, in particular, are intrusted the lives and property on board. Was this vigilance exercised? The night was clear, wind favorable (a light southerly breeze), and objects at a distance easily discernible. Both vessels were on the same line, moving in direct opposition, and at a speed of six miles an hour. The Douglass, sailing with the wind, was bound to steer clear of the White Cloud; the latter was not discovered by either the mate, wheelsman or lookout of the Douglass, until she was twice her length off, and a collision inevitable. No matter how experienced a sailor was the mate, White, or how trustworthy as a sober man, he neglected his duty at this crisis, and occasioned the neglect of duty on the part of others, until it was too late to escape the peril. A vessel is not free from blame when either the important functions of a lookout or wheelsman are causelessly interrupted, and proper care by the commander will always forbid and prevent such interruptions. The duty of lookout implies vigilant and constant observation, which cannot be faithfully discharged if subjected to the slightest interruption.

In determining the prominent facts, I have carefully considered the proofs on both sides and have no doubt as to those upon which the opinion is based. This was strengthened greatly by the declaration of Captain Turner, to Mr. H. N. Strong, on the 8th of July, twenty-four hours after the collision. Captain Turner was not on deck, his watch having expired a moment before the collision. When he retired he left all well, and therefore knew nothing of the incidents or cause of the disaster. His information was unquestionably received from his mate,

and his judgment formed from his and the statement of others. His nautical experience apprised him where the fault lay, and with this knowledge, he calls on his arrival at Detroit, upon Mr. Strong, and states, "that the Douglass was to blame; that he had written to his owners to that effect, and that he would be here and settle the damages; that it was the most lubberly piece of business he had ever known, and that his mate had seen the White Cloud light, which was a good one." When Mr. Strong thus testified, I could not regard it otherwise than as a truthful though fatal admission of Captain Turner. Independent of the character and well-known respectability of the witness, his statement bore internal evidence of truth, not impaired by the denial of Turner, "that, to his recollection, he never made such statement." Mr. Strong is positive: Turner prevaricates. The one is unimpeached, the other is proved to have made contradictory statements to Captain Elsie, and his own account of the motives of his visit to Strong and Elsie, shake the credence which otherwise might have been bestowed upon his denial. That he made the declaration, I entertain no doubt, and I think it settles the controversy. The admission of a seaman of experience and intelligence, based upon the statements of his mate and crew, made at the very time of the occurrence, thus passing judgment upon his own vessel, and attributing the calamity to its mismanagement, render almost unnecessary further examination of the facts; for, who is better able to judge than such an expert with the facts fresh before him? But the proofs presented other points, and the court could not withhold the expression of its opinion as to the character of the fault that makes the Douglass responsible. Decree for libellant.